NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAVID and ROBIN ROBERTS, Trustees of the Roberts Family Trust Joint Living Trust dated February 12, 1999; et al., *Plaintiffs/Appellees*,

*v.*

DEL WEBB COMMUNITIES, INC., an Arizona corporation; DEL WEBB HOME CONSTRUCTION, INC., an Arizona corporation; DEL WEBB CORPORATION, a Delaware corporation; and PULTE HOME CORPORATION, a Michigan corporation; PULTE DEVELOPMENT CORPORATION, a Michigan corporation, *Defendants/Appellants*.

No. 1 CA-CV 13-0119
FILED 2-24-2015

Appeal from the Superior Court in Maricopa County
No.  CV2012-003956
The Honorable Katherine M. Cooper, Judge

**AFFIRMED**

COUNSEL

Kasdan Weber Turner, L.L.P., Phoenix
By Stephen L. Weber, Michael J. White, James W. Fleming

Osborn Maledon, P.A., Phoenix
By Thomas L. Hudson
*Counsel for Plaintiffs/Appellees*

Koeller Nebeker Carlson & Haluck, L.L.P., Phoenix
By William A. Nebeker, Troy G. Allen
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Patricia K. Norris joined.

---

**P O R T L E Y,** Judge:

**¶1** Del Webb[1] appeals from the superior court's confirmation of an arbitration award in favor of 460 claimants (the "homeowners"). For the reasons that follow, we affirm.

**BACKGROUND**

**¶2** Sun City Grand residents who had purchased their homes from Del Webb reported a variety of problems with their homes, ranging from the expanding and collapsing of soils beneath the slab to defective window seals. They requested arbitration pursuant to their sales contracts[2] and ultimately the homeowners brought a consolidated claim against Del Webb for breach of the sales agreement, breach of express warranty, and

---

[1] "Del Webb" refers collectively to Appellants Del Webb Communities, Inc., Del Webb Home Construction, Inc., Del Webb Corporation, Pulte Home Corporation, and Pulte Development Corporation.

[2] Paragraph 5.5 of the agreement provided:

> Any controversy, claim or dispute arising out of or relating to this Agreement or Your purchase of the Home shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act (Title 9 of the United States Code) and judgment rendered by the arbitrator(s) may be confirmed, entered and enforced in any court having jurisdiction. The arbitration shall take place in Maricopa County, Arizona.

breach of the implied warranty of workmanship and habitability, though the claimants only proceeded on the breach of implied warranty claim.

¶3　　　　Following fifty-two days of hearings, the unanimous three-person panel issued an interim award to the homeowners of $7,884,534.87 on November 17, 2011. After briefing on the issues of fees and costs, the panel included $5,774,144 for attorneys' fees, expert witness fees, and costs in the award. The homeowners then sought confirmation of the final arbitration award in superior court and requested prejudgment and post-judgment interest. Del Webb moved to vacate the award, but after an evidentiary hearing the court confirmed the final award and included pre- and post-judgment interest. Del Webb filed an appeal and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-2101.01(A)(6) and (B).[3]

## DISCUSSION

¶4　　　　This court reviews the superior court's confirmation of the arbitration award in the light most favorable to upholding the decision and we will affirm absent an abuse of discretion. *Atreus Cmtys. Grp. of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, ¶ 13, 277 P.3d 208, 211 (App. 2012). We review the court's construction of statutes de novo, mindful that judicial review of arbitration awards is severely restricted. *Nolan v. Kenner*, 226 Ariz. 459, 461, ¶ 4, 250 P.3d 236, 238 (App. 2011).

¶5　　　　The Federal Arbitration Act ("FAA") provides that a court must confirm an arbitration award unless the award is otherwise vacated, modified, or corrected. 9 U.S.C. § 9; *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The FAA provides the following grounds for vacating an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior

---

[3] We cite to the current applicable statutes unless otherwise noted.

by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (2002). Unless a court finds grounds to vacate or modify, "confirmation is required even in the face of erroneous findings of fact or misinterpretations of law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 832 (2010) (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc)).

## I. Expert Testimony

**¶6**        Del Webb first contends that the arbitrators exceeded their authority by admitting evidence from John Bardin, the homeowners' primary expert, in violation of 9 U.S.C. § 10. Specifically, Del Webb argues that because Barden was not paid on an on-going basis he was working on a contingent fee basis and, as a result, had a financial stake in the arbitration. In making this argument, Del Webb relies on *Laos v. Soble*, where we held that a "contract providing for compensation of a witness contingent on the success of the litigation is subversive of public justice" and "[p]ublic policy considerations brand such contract illegal." 18 Ariz. App. 502, 503, 503 P.2d 978, 979 (1972); *see also, Westin Tucson Hotel Co. v. State Dept. of Revenue*, 188 Ariz. 360, 367, 936 P.2d 183, 190 (App. 1987) (holding that the Tax Court properly denied taxpayer's motion for sanctions after Pima County moved to strike the affidavit of the witness for the taxpayer because his fee was contingent on the outcome of the case).

**¶7**        A court may vacate an arbitration award "where the arbitrators exceeded their powers[.]" 9 U.S.C. § 10(a)(4). An arbitration panel exceeds its powers not by "merely interpret[ing] or apply[ing] the governing law incorrectly," but must "exhibit[] a manifest disregard of law[.]" *Kyocera*, 341 F.3d at 997 (citations and internal quotation marks omitted). Or stated differently, (1) "[t]he governing law alleged to have been ignored by the arbitrators must be *well defined, explicit, and clearly applicable*[,]" and (2) the record clearly shows that "the arbitrators recognized the applicable law and then ignored it." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879-80 (9th Cir. 2007) (quoting *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004)).

4

¶8        Here, the issue – was Bardin a "contingent fee" expert – was not one of law, but of fact as the panel had to determine the circumstances of his retention.  Thus, the issue was clearly within the province of the arbitrators. *See Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 182, 525 P.2d 309, 313 (1974) ("decisions of the arbitrators on questions of fact . . . are final and conclusive").  Del Webb raised the issue and the panel received briefs, including conflicting expert declarations, and heard Bardin's testimony on the issue.  The panel did not find, as the trial courts had in *Laos* and *Westin, see Laos,* 18 Ariz. App. at 502, 503 P.2d at 978 (noting that the handwritten contract demonstrated that the appraisal witness had a contingent fee agreement based on the outcome of the condemnation proceeding); *Westin*, 188 Ariz. at 366-67, 936 P.2d at 189-90 (noting that Pima County's motion to strike was properly based on the fact that the taxpayer's witness fee was contingent on the outcome of the case), that Bardin had a contingent fee contract based on the outcome of the litigation.  Instead, the panel concluded that Del Webb's objections to the payment of Bardin's hourly fee went "to the weight and credibility of his testimony, not its admissibility."  Accordingly, the panel did not disregard the pertinent law after considering the facts as they found them, and the superior court properly declined to disturb its ruling. *See Collins,* 505 F.3d at 884 ("In short, the arbitrators could not manifestly disregard the law because no binding precedent existed . . . .").

¶9        Del Webb also argues that admission of Bardin's testimony violated public policy.  Even if we assume the non-statutory ground survives *Hall Street,* 552 U.S. at 582,[4] we disagree.  Given the determination of the arbitration panel, Del Webb cannot rely merely on an allegation that public policy was violated, but must show "an overriding public policy rooted in something more than 'general considerations of supposed public interests' and, of equal significance, it must demonstrate that the policy is

_____

[4] It is unclear whether public policy, or even manifest disregard, is available under the FAA in light of *Hall Street*, which held that § 10(a) provides the exclusive grounds for vacating an arbitration award.  552 U.S. at 584-85; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) (leaving the question of manifest disregard's survival open). *Cf. Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009), *cert. denied*, 558 U.S. 824 (2009) (holding that the manifest disregard ground survives because it is "shorthand for § 10(a)(3) or 10(a)(4)"); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 737 F.3d 1262, 1267 n.7 (9th Cir. 2013) (explaining that standard is a judicial gloss on § 10(a)(4)) *with Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1323-24 (11th Cir. 2010) (holding that judicially created bases for vacatur were not available after *Hall Street*).

one that specifically militates against the relief ordered by the arbitrator." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1212-13 (9th Cir. 1989) (citation omitted). Given that the issue was fully briefed and the panel heard testimony before making its ruling, we perceive no "overriding public policy violation" that now requires the award to be vacated because the panel allowed Bardin to testify.

**II. Fair Hearing**

¶10     Del Webb argues that the superior court should not have confirmed the award because the homeowners' counsel employed undue means in procuring the award and deprived Del Webb of a fair hearing. Specifically, Del Webb contends opposing counsel improperly solicited homeowners, used expert witnesses to develop a large-scale construction defect case, and owned Tiger Labs, which took pictures in preparation for the arbitration. Del Webb bears the burden to prove undue means with clear and convincing evidence. *Barcume v. City of Flint*, 132 F. Supp. 2d 549, 556 (E.D. Mich. 2001).

¶11     "Undue means," as interpreted by both federal and Arizona courts, requires proof of intentional misconduct amounting to bad faith. *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 991-94 (8th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000); *FIA Card Servs., N.A., v. Levy*, 219 Ariz. 523, 525, ¶ 7, 200 P.3d 1020, 1022 (App. 2008). The term "clearly connotes behavior that is immoral if not illegal[,]" but excludes "sloppy or overzealous lawyering." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (holding that offering a meritless defense did not constitute undue means), *cert. denied*, 506 U.S. 1050 (1993).

¶12     Although Del Webb contends the solicitation of homeowners was overzealous and unethical, it cites no authority that the circumstance under which parties decide to file claims constitutes undue means and justifies denial of relief. We find no basis for reversal. *See id.* Additionally, Del Webb does not explain why the conduct it complains of is tantamount to corruption or fraud. Likewise, Del Webb does not allege that Tiger Labs' photos were fraudulent.

¶13     Moreover, relief for undue means is only available when the conduct (1) is not discoverable before arbitration even with the exercise of due diligence, (2) materially relates to an issue in the arbitration, and (3) is established by clear and convincing evidence. *Edwards*, 967 F.2d at 1404; *Nolan*, 226 Ariz. at 461-62, ¶¶ 5-7, 250 P.3d at 238-39 (applying an undue means standard identical to the FAA). Because Del Webb has

acknowledged on appeal that the arbitration panel "was aware of the manner in which the claims were developed" (and Del Webb had the ability to conduct discovery into any misconduct and bring it to the attention of the arbitration panel), the arbitration award was not procured by "undue means." *See Edwards*, 967 F.2d at 1404 (stating the standard not satisfied because the arbitrators and opposing party were aware of the meritless defenses from the outset); *accord Nolan*, 226 Ariz. at 461-62, ¶¶ 6-7, 250 P.3d at 238-39 (holding that openly using a foreign lawyer is discoverable and not "sufficiently nefarious" to warrant undermining the award's finality).

## III. Attorneys' Fees

**¶14**      Del Webb also argues that the arbitration panel exceeded its authority by determining that the homeowners were the prevailing party and awarding attorneys' fees.  The arbitration panel awarded the homeowners $2,628,178 in attorneys' fees, after finding it had the authority to determine the issue and award fees and costs to the prevailing party pursuant to ¶ 6.4.12 of the sales agreement.

**¶15**      Del Webb, however, contends the award was improper because the homeowners had abandoned their contract-based claims by only pursuing a claim of breach of implied warranty.  We disagree.

**¶16**      Although the homeowners did not pursue the breach of sales agreement and breach of warranty claims, the sales agreement required arbitration providing "[a]ny controversy, claim or dispute arising out of or relating to this Agreement . . . shall be settled by arbitration."  *See Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) (adopting the premise that an arbitration clause that "calls for any dispute relating to or arising out of the agreement to be submitted to arbitration" to mean that "the parties intend[ed] the clause to reach all aspects of the relationship") (citation and internal quotation marks omitted).  And paragraph 6.4.12 of the sales agreement contained the following fee provision:

> Attorneys Fees: In the event of any arbitration or mediation between Us and You, before or after the Closing, the prevailing party shall be entitled to an award of *all attorneys fees and costs* (including, if We prevail, the cost of Our in-house counsel based on equitable apportionment of the salary and overhead attributable to the work of such in-house

> counsel), in an amount to be determined by the
> arbitrator or mediator hearing the matter.  Any
> court or arbitrator hearing any matter on appeal
> may also award such fees to the prevailing party
> in and for any prior mediation or arbitration.

(Emphasis added.)  Because the sales agreement required the arbitration and had a specific fee provision that expressly governed the arbitration, Del Webb cannot now complain that the arbitration panel exceeded its authority in awarding attorneys' fees.

¶17        Moreover, even if the sales agreement did not authorize the panel to award fees in the absence of a breach of contract claim, Del Webb can still not complain that the fee provision was inapplicable here because both parties submitted the issue of attorneys' fees to the arbitration panel at the outset of the action.  As a result, the parties gave the arbitration panel authority to address the attorneys' fees claim and cannot – after the fact - claim that the panel exercised that authority. *See Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1136 (9th Cir. 2003) (noting the exception to the general rule is that an "arbitration panel may award attorney's fees, even if not otherwise authorized by law to do so, if both parties submit the issue to arbitration").[5]  Consequently, the action of the parties supplied additional support for the panel's action and we do not find that the arbitration panel exceeded its authority by awarding attorneys' fees.

¶18        Del Webb also argues that the fee award was improper because the homeowners were not the prevailing party.  Del Webb argues that "[a]ssuming arguendo that the contract and/or A.R.S. § 12-341.01(A) applied, the [p]anel was required to determine who was the prevailing party before awarding attorneys' fees."  As a result, Del Webb contends that because the homeowners received less ($7.8 million) than their demand for settlement ($25 million), they are not entitled to attorneys' fees.

---

[5] Even if we accept Del Webb's assertion that the arbitration panel committed legal error, such is insufficient to demonstrate that the panel exceeded its authority. *See Nolan*, 226 Ariz. at 463, ¶¶ 12-13, 250 P.3d at 240 (noting that the arbitrator's award of attorneys' fees, even if legally or factually erroneous, could not be modified unless specific statutory factors allowing modification were proven); *Kyocera*, 341 F.3d at 1003 (holding that the risk that arbitrators may imperfectly construe the governing law is a risk that arbitration parties assume).

¶19        Although the attorneys' fees provision uses the term prevailing party, Del Webb has not cited to the FAA or any case law interpreting the FAA that supports its argument. Moreover, there is nothing in the arbitration agreement that suggests that the offer of settlement provisions of Arizona Rule of Civil Procedure 68 apply by requiring the party prevailing at arbitration to be awarded more than their settlement offer before being entitled to an award of attorneys' fees. And there is no indication in the arbitration agreement or fee provision that the arbitration panel had to determine any "percentage of success factor" or a "totality of the litigation test" to determine the successful party as outlined in *Schwartz v. Farmers Ins. Co.*, 166 Ariz. 33, 38, 800 P.2d 20, 25 (App. 1990).

¶20        Instead, we look to the plain meaning of the term "prevailing party" in the fees provision to determine whether the arbitrators properly construed the term. *See, e.g., Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 90, ¶ 26, 138 P.3d 1210, 1217 (App. 2006) (a contractual attorney's fee provision controls to the exclusion of a statute); *Keggi v. Northbrook Property & Cas. Ins. Co.*, 199 Ariz. 43, 46, ¶ 11, 13 P.3d 785, 788 (App. 2000) (noting that contracts are construed according to their plain and ordinary meaning); *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 258-59, 681 P.2d 390, 410-11 (App. 1983) (same). The plain meaning of the contractual term suggests that the party who succeeded at arbitration is the prevailing party. *See, e.g., Grubb & Ellis*, 213 Ariz. at 90, ¶ 25, 138 P.3d at 1217. Moreover, we have no reason to decide that it means anything else. And we need not decide whether the arbitrators correctly interpreted the contract provision; we need only determine whether their interpretation was plausible. *Lagstein*, 607 F.3d at 643, 644-45; *see generally Berklee Coll. of Music v. Berklee Chapter of Mass. Fed'n of Teachers, Local 4412*, 858 F.2d 31, 34 (1st Cir. 1988) ("Whether we would find these arguments convincing were it up to us to interpret the contract is beside the point."). Because the issue was fully briefed and the arbitrators' interpretation of the sales agreement provision was plausible, we affirm. *See Lagstein*, 607 F.3d at 643, 644-45 (affirming and holding that arbitrators plausibly determined that their initial award was an interim award under the agreement); *see generally Oxford Health Plans L.L.C. v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (an arbitrator's decision even arguably interpreting the contract must stand).

## IV. Expert Witness Fees

¶21        Del Webb also argues that the panel exceeded its authority by awarding expert witness fees to the homeowners because the sales agreement did not authorize an award of expert witness fees, only "costs," which, it argues, means only taxable costs. Del Webb also challenges the

reasonableness of certain expert fee expenses and contends that because it demonstrated that the panel exceeded its authority in awarding fees, the award should have been vacated. We disagree with these arguments.

**¶22** Although the sales agreement is silent about expert witness fees or whether such fees would be considered a cost, Del Webb did not object to the request the homeowners made in their arbitration demand for expert witness fees. As a result, the arbitrators had authority to decide that issue. *See Schoenduve Corp.*, 442 F.3d at 732 (noting that in view of the failure to object to the arbitration demand, "the scope of the arbitrator's authority is determined not only by the [arbitration agreement], but also by the Demand for Arbitration"). Consequently, because the resolution on expert fees fell within the scope of the arbitration submission, the arbitrators' decision is final. *See id.*

**V. Interest Awarded**

**¶23** Finally, Del Webb challenges the superior court's addition of prejudgment interest to the interim award. The homeowners asked for interest on the interim award from November 17, including the corrected award on November 21 "through [the] date of the [f]inal [a]ward, February 7, 2012." In its ruling, the court granted the homeowners interest on the interim award from November 17, 2011 through February 7, 2012, the date of the arbitration panel's final award.[6] We look to Arizona law to determine whether a party is entitled to interest on an FAA interim arbitration award before confirmation. *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988). Because the issue of a party's entitlement to interest is a legal issue, we review it de novo. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996).

**¶24** Under Arizona law, "prejudgment interest on a liquidated claim is a matter of right." *Id.*; *Aqua Mgmt., Inc. v. Abdeen*, 224 Ariz. 91, 95, ¶15, 227 P.3d 498, 502 (App. 2010). The sum being claimed becomes liquidated when it is capable of exact calculation. *Alta Vista Plaza, Ltd. v. Insulation Specialists Co.*, 186 Ariz. 81, 82, 919 P.2d 176, 177 (App. 1995). Here, the homeowners' claim for damages was unliquidated until after the

---

[6] The court's order also provides that the homeowners will receive "prejudgment and post-judgment interest at the statutory rate of four and one-quarter percent (4.25%) per annum ($1,586.90 per day) from and after February 7, 2012, the date of the arbitrators Final Award, until paid."

panel's interim award. Once the panel set the amount of damages, however, the claim became liquidated.

**¶25** Moreover, the homeowners were entitled to interest on the interim award and final award because the homeowners did not raise the issue and the arbitration panel did not address it. In *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1055 (9th Cir. 2013), the Ninth Circuit Court of Appeals stated that "[c]ourts do not lack authority to award interest where an arbitration award is silent" because the failure of the arbitrators "to speak on interest otherwise does not constitute a denial of interest[.]" Consequently, once the arbitration panel issued its interim award, the award was a liquidated sum and the homeowners were entitled to interest.

**¶26** Del Webb also contends that the court erred by ordering interest on the interim award because it was not a final award. We disagree and find that our decision in *Creative Builders Inc. v. Avenue Developments, Inc.*, 148 Ariz. 452, 458, 715 P.2d 308, 314 (App. 1986), is instructive. There, the arbitration panel issued its ruling, but the trial court twice returned the award for consideration of additional issues. *Id.* at 453-54, 715 P.2d at 309-10. After recognizing that prejudgment interest on a liquidated claim is a matter of right, *id.* at 457, 715 P.2d at 313, we noted that the trial court had erred by awarding pre-award interest from the date of its first demand, *id.*, but stated that our holding did not preclude the court from awarding interest on the award "from the date of the of the issuance of the initial award." *Id.* at 457-58, 715 P.2d at 313-14.[7]

**¶27** Although the trial court sent the initial award in *Creative Builders* back to the panel two times to address different issues, the case helps inform our decision because the arbitration panel's interim award in this case was corrected by the panel within four days as follows: the homeowners were awarded $7,878,934.87 on November 17, and the panel corrected the sum by modification to $7,884,534.87 on November 21, 2011. Accordingly, the interim award was a liquidated amount and entitled to an award of interest beginning November 17, 2011. Consequently, and as

---

[7] Equally unavailing is Del Webb's reliance upon *Cummings v. Budget Tank Removal & Environmental Services, L.L.C.*, 260 P.3d 220 (Wash. Ct. App. 2011). In *Cummings,* the interim award was not in the record. *Id.* at 228, ¶¶ 32, 36. As a result, and under Washington law, the trial court abused its discretion by awarding interest on the interim award. *Id.* at ¶ 36. Given the fact that Arizona allows interest on liquidated amounts and the interim award is in the record, we find no error.

requested by the homeowners, they were entitled to interest on the interim award from the date it was entered until the date modified and then until the date of the final award. Accordingly, the court, did not err by awarding interest on the interim award.

¶28 Del Webb next contends that the claim was not liquidated until the filing of the final award because the interim award did not include fees and costs. We also disagree with this argument.

¶29 As noted, the interim award was the panel's resolution of the damages for the breach of implied warranty claims. The only issues that remained were attorneys' fees and costs because the arbitrators noted that those were "[t]o be determined in the Final Award." The parties then addressed attorneys' fees, expert fees and related costs, and those were resolved in the final award. Although both parties made a claim for attorneys' fees, and the arbitrators had to resolve that issue, along with the expert witness fee issue and costs, the damages in the interim award did not change. Because there were no additions to the interim award after it was modified on November 21, 2011, the homeowners were entitled to interest on the interim award when it was issued and modified. *See Alta Vista*, 186 Ariz. at 83, 919 P.2d at 178 (holding that the plaintiffs are entitled to prejudgment interest on damages from the date of first accrual, even if defendants dispute the claim or succeed in reducing the amount). Similarly, because the final award combined the damages claim and added attorneys' fees, expert fees, and costs, the homeowners were then entitled to interest on the combined final award from the date of that award.

¶30 Del Webb also complains that the court granted interest on the final award from February 7, 2012, until the confirmation judgment, instead of the date the final award was entered by the American Arbitration Association. We disagree.

¶31 When the homeowners originally requested interest on the final award, they requested interest beginning on February 14, 2012, the date the final award was filed with the American Arbitration Association, but later amended the request to February 7, 2012, the date the panel signed the final award. Although the final award of February 7 was not filed with the American Arbitration Association until February 14, interest was due on the final award from February 7 because the sum was then liquidated. Consequently, the superior court did not err by awarding interest beginning on the date was final award was signed.

## VI. Attorneys' Fees on Appeal

**¶32** Both parties request attorneys' fees and costs on appeal pursuant to the sales agreement and ARCAP 21. Because the homeowners' have prevailed, we grant them their reasonable attorneys' fees on appeal pursuant to the sales agreement, as well as their costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶33** We affirm the superior court's judgment confirming the arbitrators' award and adding interest.



Ruth A. Willingham · Clerk of the Court
FILED: ama

13